## Case No. 17,213.

### WASHBURN v. CASS COUNTY.

[3 Dill. 251.] [1]

Circuit Court, W. D. Missouri. 1875.

CONSOLIDATION OF RAILWAY COMPANIES—VALIDITY
—BONA FIDE PURCHASER OF BONDS.

1. Railroad company A was organized for the purpose of eventually consolidating, under a law of the state authorizing it, with company B. A township, under a statute giving the power, voted to issue bonds to pay for stock in company A, and it was accordingly subscribed. Afterwards companies A and B were consolidated and the bonds before voted were issued to the consolidated company and recited a due and legal consolidation. A defense to the bonds was made on the ground that the consolidation was void; held in favor of a bona fide holder of bonds for value without notice of the facts which it was insisted rendered the consolidation illegal, that the defense was unavailing; the case being considered to fall within the principle of Nugent v. Supervisors, 19 Wall. [86 U. S.] 241.

2. It seems that the Missouri railway consolidation act of March 24th, 1870 (1 Wag. St. 314), does not require. as a condition of a legal consolidation, that both of the constituent companies should own roads completed in whole or in part.

Action [by William B. Washburn] on bonds. The material facts are as follows: On the 19th day of July, 1870, a petition, signed by twenty-five tax-payers and residents of the municipal township of Polk, in Cass county, was presented to the county court of that county, setting forth the desire of the petitioners to vote a township subscription of $15,000 to the capital stock of the Pleasant Hill Division of the Lexington, Chillicothe & Gulf Railroad Company, and requesting the court to order an election to determine if such subscription should be made, upon certain terms named, among others, that the subscription should be payable in bonds. On the same day the petition was granted, and the election ordered to be held on the 30th day of August, 1870. On the 16th day of the next month (September) due proof having been made to the court that the election had been held and that two-thirds of the qualified voters of the township. voting thereat, had voted in favor of the subscription, it was accordingly made upon the terms prescribed. The Pleasant Hill Division of the Lexington, Chillicothe & Gulf Company, was a corporation created under the general incorporation act of Missouri. and was created. as appears by its articles of association. for the purpose, among others, of consolidating with, and becoming a part of, a certain other company. similarly created: and known as the Lexington, Chillicothe & Gulf Railroad Company. One of its proposed termini was to be such point in the south line of Cass county as would enable it most conveniently to intersect and consolidate with the latter company. On the 4th day of October, 1870, this consolidation was duly effected, both companies having

---

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

previously signified their acceptance of the general law relating to consolidation of railroads in the manner required thereby. The new or consolidated company took the name of the Lexington, Lake & Gulf Railroad Company, and by the terms agreed upon, became possessed of and entitled to all the powers, rights, franchises, privileges, assets, subscriptions, bonds, moneys and properties whatever of each of the constituent companies. On the 2d of May, 1871, the county court, by an order reciting all the steps previously taken by the court, the vote of the people, the object of the incorporation of the Pleasant Hill Division, and the fact of the consolidation, and also that the terms of the subscription had been faithfully complied with, directed that the bonds authorized by the vote of August 30th, be delivered to the Lexington, Lake & Gulf Company, at the same time acknowledging the receipt of certificates of full paid stock in that company to the proper amount. These bonds were accordingly issued, and contain the following recitals: "This bond being issued under and pursuant to an order of the county court of Cass county, by virtue of an act of the general assembly of the state of Missouri, approved March 23d, 1868, entitled 'An act to facilitate the construction of railroads in the state of Missouri,' and authorized by a vote of the people, taken August 30th, 1870, as required by law, upon the proposition to subscribe $15,000 to the · capital stock of the Pleasant Hill Division of the Lexington, Chillicothe & Gulf Railroad Company, and which said railroad company last aforesaid, and the former Lexington, Chillicothe & Gulf Railroad Company, were on the 4th day of October, 1870, consolidated as required by law into one company, under the name of the Lexington, Lake & Gulf Railroad Company, and which said last named railroad company, as provided by law, and under said consolidation thereof, possesses all the powers, rights and privileges, and owns and controls all the assets, subscriptions, bonds, moneys and properties whatever of the two said several companies forming said consolidation, or either of them." On the 4th day of October, 1870 (the date of consolidation) no work had been done by the Pleasant Hill Division on the line. Afterwards the Lexington, Lake & Gulf Company graded and bridged a portion of it, but no part was ever completed. The relative positions of the consolidated and the two constituent roads were shown by a map, which constituted part of the agreed case. The coupons sued on are from the bonds issued as above shown; and the plaintiff is a holder of them for value, and without notice of any irregularity or illegality attending their issue, if any in fact exists, except such as results from operation of law from the facts hereinbefore stated.

The act of legislature of March 24th, 1870 (1 Wag. St. 314), in respect to the consolidation of railways, is as follows: "Any two or more railroad companies in this state existing under either general or special laws, and owning railroads constructed wholly or in part, which when completed and connected, will form in the whole or in the main, one continuous line of railroad, are hereby authorized to consolidate in the whole or in the main, and form one company, owning and controlling such continuous line of road, with all the powers, rights, privileges and immunities, and subject to all the obligations and liabilities to the state, or otherwise, which belonged to or rested upon either of the companies making such consolidation. In order to accomplish such consolidation the companies interested may enter into contract, fixing the terms and conditions thereof, which shall first be ratified and approved by a majority in interest of all the stock held in each company or road proposing to consolidate, at a meeting of the stockholders, regularly called for the purpose; or by the approval in writing of the persons or parties holding and representing a majority of such stock. A certified copy of such articles of agreement, with the corporate name to be assumed by the new company, shall be filed with the secretary of the state, when the consolidation shall be considered duly consummated; and a certified copy from the office of secretary of state shall be deemed conclusive evidence thereof. The board of directors of the several companies may then proceed to carry out such contract according to its provisions, calling in the certificates of stock outstanding, in the several companies or roads, and issuing certificates of stock in the new consolidated company under such corporate name as may have been adopted; provided, however, that the foregoing provisions of this section shall not be construed to authorize the consolidation of any railroad companies or roads, except when by such consolidation a continuous line of road is secured, running in the whole, or in the main, in the same general direction, and provided, it shall not be lawful for said road to consolidate in the whole, or in part, when by so doing it will deprive the public of the benefit of competition between said roads; and in case any such railroads shall consolidate or attempt to consolidate their roads contrary to the provisions of this act, such consolidation shall be void, and any person or party aggrieved, whether stockholders or not, may bring action against them in the circuit court of any county through which said road may pass, which court shall have jurisdiction in the case, and power to restrain by injunction or otherwise; and in case any railroad in this state shall hereafter intersect any such consolidated road, said road or roads shall have the right to run their freight cars, without breaking bulk, upon said consolidated road, and such consolidated road shall transact the business of said intersecting or connecting road or roads on fair and reasonable terms, and the same may be enforced by appropriate legisla-

tion. Before any railroad company shall consolidate their roads under the provisions of this act, they shall each file with the secretary of state a resolution accepting the provisions thereof, to be signed by their respective presidents, and attested by their respective secretaries, under the seal of their respective companies, which resolution shall have been passed by a majority vote of the stock of each, at a meeting of the stockholders thereof to be called for the purpose of considering the same."

T. K. Skinker and Davis & Smith, for plaintiff.

W. P. Hall and Gage & Ladd, for defendant.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

KREKEL, District Judge. The main question is, could the Pleasant Hill Division of the Lexington, Chillicothe & Gulf Railroad Company consolidate with the Lexington, Chillicothe & Gulf Railroad Company without having a part of its road constructed, or having work done thereon.

The agreed statement of facts admits that on the 4th day of October, 1870, the date of filing the articles of consolidation between the two roads, and assuming the name of the Lexington, Lake & Gulf Railroad, The Pleasant Hill Division of the Lexington, Chillicothe & Gulf Railroad Company had constructed no part of its said railroad, in whole or in part, and had done no work thereon. In order to arrive at the intention and meaning of the consolidation act, it is necessary to look into the various provisions of law conferring authority upon the companies concerned.

The Pleasant Hill Division of the Lexington, Chillicothe & Gulf Railroad Company was duly organized. The act of March 23d, 1868, provides for a submission on the petition of twenty-five tax-payers of any municipal township, setting forth their desire to subscribe to the capital stock of any railroad company in this state, building or proposing to build a railroad.

When the twenty-five tax-payers presented their petition to the county court of Cass county, there was but one company organized to build a road "passing through or near said township of Polk" (quoting from the petition), and that company's articles of association in its second section provided that it was intended "eventually to consolidate with and form a link and be a part of the main line of the said Lexington, Chillicothe & Gulf Railroad." Without this connection it would have been a railroad beginning and ending in the open country.

The subscription (voted by the necessary two-thirds vote) was, on the 16th day of September, 1870, made by the county court to the Pleasant Hill Division of the Lexington, Chillicothe & Gulf Railroad; but it is said the bonds and coupons issued under it to the Lexington, Lake & Gulf Company (which is the corporate name of the consolidated company) are void, because the consolidation was illegal and null.

It is contended that to make a legal consolidation under the statute authorizing it, the company must own railroads constructed wholly or in part. Act March 24, 1870 (1 Wag. St. 314). The language of the first section of the act is: "Any two or more railroad companies in this state, existing under either general or special laws, and owning railroads constructed wholly or in part, which, when completed and connected, will form in the whole, or in the main, one continuous line of railroad, are hereby authorized to consolidate, in the whole or in the main, and form one company owning and controlling such continuous line." In the same section all consolidations, contrary to the act, are declared void. "and any person or party aggrieved, whether stockholder or not, may bring an action against them in the circuit court of any county through which such road may pass, which court shall have jurisdiction in the case and power to restrain by injunction or otherwise."

The question is, what is meant by the language, "owning railroads constructed wholly or in part"—must both roads be wholly or in part constructed? Looking to the object had in view in authorizing consolidation of roads wholly or in part constructed, the inference is, that the building and construction of roads were thereby to be advanced, and such construction should be given to the act as to accomplish this so far as the language used will reasonably permit.

A railroad company duly organized, and having private and corporate stock subscribed to it, may, under the language quoted, be said to be owning a railroad, and indeed would seem to own it, unless the words are construed to mean work done on the road, in grading, bridging, etc. But it is not necessary to give the construction here indicated, for as one of the consolidated roads, namely, the Lexington, Chillicothe & Gulf Road, was under actual construction at the time of consolidation, the law is fully complied with, unless both companies must own roads constructed wholly or in part.

The views as to the proper construction of the consolidation act here indicated, gain strength from the provisions of the act of March 23d, 1868, which authorizes subscriptions to capital stock to companies "building or proposing to build a railroad." Under this act, the vote and subscription were authorized, and that to a company whose declared purpose was to eventually make the very consolidation under consideration. Unless the consolidation was void, there can be no question but that the new company succeeded to all the rights of each of the companies consolidated, and that the issuing of the bonds to such consolidated company to pay a subscription to one of them —the Pleasant Hill Division—was lawful.

The question whether each of the consolidated companies "owned railroads constructed

wholly or in part," so far as this is a question of fact, was a fact peculiarly within the knowledge of the county court, and to the existence of which it certified by the recital in the bond, that the consolidation was in due form of the law. Even if such recital did not estop the defendant from denying it, an innocent purchaser of the bonds, for value, is not affected by its falsity, if false it was.

The question, whether the legal existence of a corporation, in the exercise of corporate functions as this consolidated company was, when building a part of the Pleasant Hill Division, after consolidation, as admitted in the agreed statement of facts, can be taken advantage of collaterally, is one which seems, on authority, to be against the defendant. It must have been so viewed by the legislature, for they provided a remedy without invoking the aid or awaiting the action of the state by declaring all consolidation contrary to the act void, and that "any person or party aggrieved, either stockholder or not, may bring an action against them in the circuit court of any county through which such road may pass, which court shall have jurisdiction in the case, and power to restrain by injunction or otherwise."

There is some force in the position taken by the plaintiff, that if the consolidation was void in this case, the original subscription to the Pleasant Hill Division of the Lexington, Chillicothe & Gulf Railroad being unquestionably valid, these bonds may be held good under that subscription and in payment thereof.

Be this however, as it may, the plaintiff has declared on the bonds of the consolidated company and by that it must stand. With no decisions of the supreme court expounding the above mentioned consolidation act, such a construction has been given to it as in my view best harmonizes with the law, and the design of the legislature in enacting it.

The objections as to conditions of consolidation in other respects can have no application here, for it is obvious that a road, such as the Pleasant Hill Division, with no means to connect, would without consolidation be utterly useless and worthless. So well was this understood that "eventual consolidation" was provided for in the articles of association. The case is with the plaintiff.

DILLON, Circuit Judge. I concur in the result of the foregoing opinion and in the main in the views therein advanced.

The leading elements in the case are that the bonds are negotiable, were issued by the proper officers, and the plaintiff is a bona fide holder for value without any notice of the facts now ruled on as a defense, except so far as he is bound in law to take notice thereof.

The vote was duly had in favor of the Pleasant Hill Division, a distinct corporation, and whose articles in express terms provided for a consolidation with the very company with which it afterwards consolidated. The subscription was made to the stock of the company voted for; but afterwards and before the bonds in suit were issued, the contemplated consolidation was effected by the concurrent action of the stockholders of the two constituent companies, and a new company formed. All the steps required by law to effect this consolidation were taken, and the bonds were issued, as by the statute they were required to be, to the new company. See, also, Nugent v. Supervisors, 19 Wall. [86 U. S.] 241.

But it is said that this consolidation is void, and hence the bonds were illegally issued. It is to be remarked, however, that the validity of the organization of the new company has never been questioned by any stockholder, nor by the state. I do not consider it to be necessary in this case to determine whether on the facts agreed a stockholder or the state could successfully question the validity of the consolidation on the ground that one of the companies, although possessing capital stock paid in and subscribed, had in point of fact no part of its road actually constructed.

It is not claimed that the plaintiff had actual notice of this fact when he purchased the bonds; and the bonds in express terms recite that the consolidation was made as required by law. Upon this recital as respects facts in pais, the purchaser of the bonds had a right to rely; and in the face of this recital, the plaintiff was not bound to inquire whether each of the two constituent companies had all or some part of its road actually completed, nor whether the roads when completed would form a continuous line, even if each of these facts was an essential condition of a consolidation de jure.

This case is substantially within the doctrine of Nugent v. Supervisors, above cited, and differs from Harshman v. Bates County [Case No. 6,148], where the subscription was made after the consolidation, and where there was no authority in the charter of the company voted for to consolidate with another company. Judgment for plaintiff.

Other cases against Cass county: Kennard v. Cass County [Id. 7,697]; Jordan v. Cass County, [Id. 7,517].